Chief Justice Robertson,
delivered the opinion of the court.
On the 15th day of September, 1817, William S. Young sold to Allen Singleton his interest in a Tannery, and in the lot of ground and improvements where it was established, and gave him a bond for a title, in which, after des’eribing the boundaries of the lot, and after acknowledging the consideration to be $2720 payable in four equal annual enstaliraents, ivlih interest on each note from the date, ho coyer-unfed as follows: “For which payments well arid truly maae in good and lawful mo» ncy of Kentucky, í relinquish all my right, title and interest in the Tannery, and bind myself, my heirs, or executors, to convey to the said Allen Singleton, by a deed "of generes. warranty, the lot or piece of ground agreeable to the metes and bounds above mentioned.”
Singleton was forth-wiih put into the possession of the Tannery ami g"ou¡;d, and has enjoyed them ever since.
Young bavin:1; died, thin suit was brought on the 31st of May, Í830, by Singleton against Young’s executors, for r rir,;*.;”' íunanh of Ids covenant to convey a legal ¡j tío io '• íoí of ground j a "demurrer to the declctsti'/.! -ismi;;» fcov* overruled, the jury on an issue on the pica of covenants performed, found a verdict for Singleton, for$15 04 in damages, upon which the court rendered judgment.
Two questions only are presented.
1st. Did the om’.rait court or- r¿ overruling the demurrer to the «onreraiion'i
*317 2d. Did it err in instructing the jury that the value of the lot at the date of the contract with legal interest thereon from that time until the trial furnished the legal measure of damages?
I. The only objection to the declaration is, that it does not aver the payment of the consideration. If the covenant to convey be dependent on the payment of the consideration, the declaration is, of course, insufficient; but if the undertaking to pay the consideration, and the covenant to convey be independent, the declaration presents a good cause of action.
The intention of the parties, whatever it may have been, must alone govern. But although the principles established for ascertaining the intention of parties in making contracts are well defined, and understood their application to particular cases, will not alwaysléad to a result certainly just or entirely satisfactory. The covenant in this case is awkward and peculiar in its phraseology, and to ascertain its true intent, is far from being an easy task.
No time is fixed for making the title, and the terms for paying the consideration are designated; the conveyance of the title is only a part of the consideration for the payment of the money; the undertaking to pay the money is therefore independent of the covenant to convey the title. It seems from the covenant itself, that notes for the money were given independently of the covenant for title. The consequence legally resulting from these facts is, that the payment of the money, and the conveyance of the title are not mutual and concurrent acts; each de-pendant on the other, and to-be simultaneously performed; and that neither the one nor the other is a condition precedent to the other, unless the language of the covenant can be construed to import an intention different from any which the nature of the contract or any of its positive stipulations would authorise a court to infer.
There is nothing in the phraseology of the covenant which, in our opinion, requires any such construction. «For which payments, &c. I relinquish, &c. and bind myself, &c.” is the only sentence in the covenant which can, in any degree, give countenance *318 to such construction. But that stipulation when scrutenized, does not, we think, require Singleton to pay all the money before he would have a right to exact of Young a performance of his covenant. “For which payments” means, for which sums or consideration paid or secured by note as before recited in the covenant. “Well and truly made” does not, when the whole covenant is considered, import that the money must all be actually ' paid before Yoiing shall convey the title; but means only that Young relinquished his interest in the Tannery, and undertook to convey the legal title to the lot, in consideration of certain payments to he made by Singleton, or which Singleton had undertaken to make, or, in other words, in consideration of Singleton’s undertaking to pay the specified sums. The relinquishment and the covenant to convey, are both in the present tense. “I relinquish,” “and bind myself to conveyBut the relinquishment was executed; it took effect instantly. The actual payment of the money was not, therefore, necessary to give it effect; and consequently, as to the relinquishment of the interest in the Tannery; the expressions, “for which payments well and truly made,” were not intended to mean that the relinquishment depended on the actual payment as a condition precedent, but clearly and undeniably import; though awkwardly written; that Young relinquished his interest in consideration of the obligation of Singleton to pay him certain sums of money. Shouldnot the same expressions be understood in the same way, when applied to the covenant to convey whichis connected with the relinquishment by the copulative conjunction? Can the same expressions in the same sentence mean one thing when applied to one branch or part of the sentence, and a different thing when applied to another correlative branch or part of the sentence? Can the sentence we are now considering be construed to mean that Young relinquished his interest in the Tannery, in consideration of Singleton’s covenant to pay, but bound himself to con-, vey the title in the event only of actualpaymentl “I relinquish, and bind myself-to convey,” refer to the same consideration. If the notes for the money formed the consideration of the relinquishment, they, and not their payment furnished the only consider *319 ation for the obligation to convey. The covenant should be interpreted as if it read, “For which consideration” (referring to the recital of the consideration,) I relinquish, &c. and bind myself to &c. Such is the effect of the covenant according to its grammatical import.
The words should be construed according to their popular use and import. A common man desirous to know the terms of the contract would, when told that $2720 was the price, be apt to ask, “what are the paymentsf And the answer would be $>680 a year for four years.” Then, after having recited the consideration to be $2720 payable in four annual installments, Young may have intended by the expressions, “for which payments,” nothing mo're nor less than “for which sums thus to be paid;” and by adding “well and truly »iade,” he may have intended only to acknowledge the receipt of the consideration in the notes for the amount.
He could not be understo.od to have intended by these words, what they of themselves literally import; thatis, that the money had been actually paid.
When the entire sentence is considered, and especially when it is connected with the precedent recital to which it must be understood as referring, it does not mean that the four installments had been actually paid, nor that they must be so paid before the title can be demanded. “Payments well and truly made” may mean either; “payments when well and truly made;” or “payments well and truly to he made;” and if the covenant contained no relinquishment but only an undertaking to convey, the interpretation of “to be,” might be as proper as the insertion of “when,” or of any other word or phrase. If the elipsis be filled with “to ¿e,” there is no precedent condition.
But when the whole sentence is considered, it is not consistent or reasonable, as already suggested, to interpret the expressions, “well and truly made,” as meaning “zuhen made,” because then they would have one import when applied to one branch of the sentence, and the opposite import when applied to another branch of the same sentence. Besides, if *320 Young had intended that the payment of the whole consideration should precede the conveyance, it seems to us, that other, and more clear and explicit language than that which has been quoted, would have been employed to express that intention. And it is safest, when the intention of the parties is doubtful, to construe their covenants to be independent.
A covenant _ like a cove-e^property'or perform service, and a moreboundin case of a breach of one than the other, to give interest.
The value of the date^if * the contract with interest on that value, is the maximum which a canrecover from a cove-nantor, for a cuTfrauí^of a'covenant to convey. '
Monroe, for plaintiffs; Mills and Brown, for defendant.
The foregoing considerations will not allow this cour¡; to decide that the covenant to convey, is in this case dependent.
H* But the circuit Judge erred in his instruction to the jury. A covenant to convey is like covenant to deliver property or perform service. A jury is not hound in the one case more than in the others to give interest; Handley vs. Chambers, I. Littell’s Reports, 358.
The value of the realty at the date of the contract with interest on that value, is the maximum which a covenantee can recover from a covenantor for a ^reac^ (without fraud) of a covenant to convey, But a jury may, and sometimes should, withhold interest.
In this case, Singleton had enjoyed the possession an(j Use of the properly, and has never been evicted, The jUET ought not, therefore, to have given interest unless facts had appeared which this record does not exhibit; consequently, the value of the lot with legal in*:eres*; was noí; “^e legal criterion of damages.” The jury ought to have been instructed, that they had a right to allow or withhold interest.
Wherefore, the judgment is reversed, and the cause remanded for a new trial.